## Case No. 5,333.

### The GEORGE GILCHRIST.

[1 Lowell, 234.] [1]

District Court, D. Massachusetts. March, 1868.

#### SALVAGE.

A brig and cargo valued at about $95,000 were saved from a position of much danger,

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

in the daytime, by a valuable steamer which employed thirteen persons and took four hours for the service, without much danger to the steamer. The property might probably have been saved by another steamer that was in sight. $2,800 awarded as salvage.

At daylight on Saturday the fourteenth day of December, 1867, the steamer Monohansett, which is employed as a packet between New Bedford and Edgartown, was at the latter port, when her master was informed that a square-rigged vessel was lying close to the shoals about ten miles to the eastward. A very severe north-east gale and snow-storm had been blowing for two days, and the steamer's fires had been kept up in anticipation that her services might be wanted for the rescue of some vessel in distress. The storm had abated a good deal, and the weather was no longer thick. She immediately proceeded out into Vineyard Sound, and found the brig, George Gilchrist, at anchor in a very dangerous position; the brig's cables were buoyed and slipped, and she was towed into Edgartown, the whole service having occupied about four hours. The cargo was worth $72,700; the brig, $18,500; and the freight, $3,750; in all $94,-950. The steamer was manned by thirteen persons, including a pilot, taken for the occasion, and was worth about $60,000. The pilot was not expressly named in the libel, but it was agreed that the decree should be for a gross sum, including his services, and that he should file a sufficient release of damages.

J. C. Stone and W. W. Crapo, for libellants.
J. C. Dodge, for claimants.

LOWELL, District Judge. The only difficulty here, and it is a considerable one in all these cases, is to ascertain the fair amount of salvage to be awarded. As bearing upon this a very large number of witnesses have been examined concerning the character of the place where the brig was lying, which was between two shoals called Long and Shovelful shoals, and her probable chances of escape without assistance. The shoals were under her lee and almost surrounding her, and she could not have got out in the direction in which she had drifted in, without a change of wind. It was discovered afterwards that one of her anchors was gone, that the other had lost its stock, and that her kedge only was uninjured. During this morning the tide was setting against the wind, and it is maintained by the libellants that she would probably have dragged, upon a turn of the tide. The wind was still from the north-east, with no immediate prospect of change, and the sea was very heavy. Whether she could have got out by the narrow passage between the two shoals to leeward, has been the subject of much controversy. Many disinterested witnesses for the libellants assert that the chart gives too much water at that point, and that there is

really not over ten feet, while this vessel drew eleven feet and upwards.

Upon all the evidence, I am satisfied that the brig was in a very awkward situation, much more so than her master, who was ignorant of the state of his anchors, was aware of, and that it is extremely doubtful whether she could have reached a place of safety without the aid of a steamer or a change in the wind. The aid which was rendered was prompt, efficient, and successful. On the other hand, the storm had lulled, though perhaps not ended; she had daylight, was uninjured except in her ground tackle, and might probably have been rescued, if the Monohansett had not come up, by another steamer which had seen and was coming towards her.

This is one of those cases in which a disabled vessel is opportunely and successfully taken in tow, but in such a place, that she might count with pretty strong hope on other assistance in default of that of the actual salvor. In such a case the need of succor is not so urgent as to make the amount saved the most important element of the salvage service, though it is not to be overlooked; but the point first in consequence is the risk, trouble, and expense, as well as the knowledge, skill, and seamanship which the salvors have contributed to the result. As compared with the recent case of The Acacia [Case No. 22] the value here saved is about double, and the risk from which it was saved is greater, because there the danger would not be urgent until a change of wind, while here it was imminent unless there were such a change; and the knowledge of the ground, the skill and seamanship required to go safely to the vessel, take her in tow, and get her out were greater; and there was some risk to the steamer in doing all this so near a lee shoal. On the other hand, the steamer is very much less valuable than were the steamer and her cargo in that case, and the time lost is much less. I will add that I am not sure that I gave quite enough in that case. Considering all the circumstances, I award the sum of $2,800 and costs. Decree accordingly.

This decision was affirmed by the circuit court, on an appeal by the salvors, October term, 1868. [Case not reported.]